UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICKIE L. DISSETTE, | ) | CASE NO. 1:09CV1335 |
| Plaintiff, | )<br>)<br>) | MAGISTRATE JUDGE<br>GEORGE J. LIMBERT |
| v. | )<br>) | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | )<br>) | **MEMORANDUM OPINION**<br>**AND ORDER** |
| Defendant. | )<br>) | |

Vickie L. Dissette ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned REVERSES the Commissioner's decision and REMANDS this case for further factfinding, analysis, and articulation by the administrative law judge ("ALJ"):

I.  **PROCEDURAL AND FACTUAL HISTORY**

On August 15, 2005, Plaintiff filed an application for SSI. Tr. at 66-68. Plaintiff's application was denied initially and on reconsideration. Tr. at 47-49, 52-54.

On July 27, 2006, Plaintiff filed a request for an administrative hearing. Tr. at 41-42. On November 4, 2008, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 527-48. At the hearing, the ALJ heard testimony from Plaintiff and Thomas Gusloff, a vocational expert. *Id*. On January 23, 2009, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 9-22. Plaintiff filed a request for review, which the Appeals Council denied. *Id*. at 5-8.

On June 11, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On November 9, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #11. On December 9, 2009, Defendant filed a brief on the merits. ECF Dkt. #12. Plaintiff has not filed a reply. *See* ECF Docket.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005. Tr. at 14. The ALJ also found that Plaintiff has the following severe impairments: status-post left knee tear and surgeries; degenerative changes of lumbar spine, incomplete right bundle branch block; affective disorder (depression v. possible bipolar disorder); and borderline intellectual functioning. *Id*. at 14. Next, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. Tr. at 16. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work. *Id*. at 17. He specifically found that she could lift no more than 10 pounds at a time; occasionally lift and carry articles like docket files, ledgers, and small tools; stand/walk for a total of no more than 2 hours in a normal 8-hour workday; and sit for a total of 6 hours in a normal 8-hour workday subject to Plaintiff being allowed to alternate between sitting and standing at will, using an assistive device for ambulation, and limited to performing 1- or 2- step tasks. *Id*. The ALJ determined that Plaintiff had no past relevant work. Tr. at 21. Based on Plaintiff's RFC and the vocational expert's opinion, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 21.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

    4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

    5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.    ANALYSIS**

    **A.    Whether the ALJ erred in analyzing Plaintiff's impairment under Listing 12.05(C)**

Plaintiff first contends that the ALJ erred in analyzing her condition under Listing 12.05C. ECF Dkt. #11 at 13-17.  Plaintiff contends that the ALJ did not dispute that Plaintiff has the required IQ deficits to meet the listing, but instead the ALJ found that Plaintiff was not mentally retarded because she did not have deficits in adaptive functioning. ECF Dkt. #11 at 14 citing Tr. at 15. Plaintiff concludes: "Therefore, the ALJ failed to complete the analysis under 12.05(C)." *Id*. The Court disagrees because the ALJ properly considered the introductory paragraph of Listing 12.05.

In order to establish a disability pursuant to Listing 12.05C, a claimant must meet three requirements: (1) she must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) she must establish that she meets the first requirement of 12.05C by showing that she has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) she must establish that she meets the second requirement of 12.05C by showing she has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00A, 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The language of the diagnostic criteria in the introductory paragraph of Listing 12.05 and the diagnostic criteria for mental retardation set forth in the DSM-IV-TR both require deficits in adaptive functioning. *See* DSM-IV-TR at 49;20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 12.05. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698-99 (6th Cir. July 5, 2007). The definitions are similar enough that The Honorable Kathleen O'Malley of this Court has observed that the introductory paragraph of Listing 12.05 "tracks" the DSM-IV. *See Thomas v. Commissioner of Social Sec.*, Case No. 08-CV-1365, 2010 WL 1254788 at *11

(N.D.Ohio Mar. 25, 2010) slip op.

In this case, the ALJ relied on a consultative examination where David House, Ph.D. diagnosed Plaintiff with borderline intellectual functioning rather than mental retardation. Tr. at 15 citing Tr. at 282; *see also* Tr. at 283-84. Recently, Judge O'Malley has considered the issue of whether an ALJ's reliance on a diagnosis of borderline intellectual functioning constitutes substantial evidence in support of a finding that the introductory paragraph of Listing 12.05 has not been satisfied. *See Thomas*, 2010 WL 1254788 at *8-*12. In *Thomas*, the court held that a claimant is not required to present a diagnosis of mental retardation in order to satisfy Listing 12.05C, but she must presently suffer actual mental retardation in order to satisfy the threshold requirement of the introductory paragraph. *Id*. at *10 ("the flaw in Thomas' argument is that he ignores the threshold requirement of Listing 12.05-a finding that he presently suffers actual mental retardation."). The *Thomas* court pointed to *Cooper*, where the Sixth Circuit Court of Appeals held that "it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05." *Id.* quoting *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007). The *Cooper* court reasoned that no psychologist had diagnosed the claimant with mental retardation, and the examiner and clinical psychologist who tested him advanced a diagnosis of borderline intellectual functioning. *Id.*

The *Thomas* court made clear that a diagnosis is not necessary to prove mental retardation, but some evidence is required. *Thomas*, 2010 WL 1254788 at *11. Specifically, the *Thomas* court noted that "[t]here is. . . ample Sixth Circuit authority for the proposition . . . that a clinical psychologist's diagnosis of the claimant as outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05(C)." *Id*. (collecting cases). In fact, "significant reliance on a diagnosis of something other than 'mental retardation,' such as 'borderline intellectual functioning,' is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV." *Id*. Given the holding in *Thomas* and the underlying precedents supporting it, the Court finds that it was

-5-

appropriate for the ALJ to rely on Dr. House's opinion.

Further, the ALJ in this case indicated that Plaintiff completed high school, she is organized and successfully completes activities of daily living, maintains personal hygiene, and cares for her seven-year-old son. Tr. at 15. Dr. House's report supports the ALJ's findings. Dr. House noted that Plaintiff knows how to do laundry, make a grocery list, and manage money. Tr. at 280. The Sixth Circuit has held that the ability to perform these activities constitutes evidence that a claimant does not have a deficit in adaptive functioning. *See West*, 240 Fed. Appx. at 698-99 ("We nevertheless affirm the ALJ's decision because West introduced absolutely no evidence that he experienced deficiencies at all in 'adaptive functioning,'. . . West continued to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities."). Lastly, the ALJ noted that Plaintiff kept pace and appropriately answered questions during the administrative hearing. *Id.* Upon review of the transcript of the hearing, the Court sees no reason to question the ALJ's observation that Plaintiff appropriately answered questions.

Given the foregoing, the undersigned finds that the ALJ's decision was supported by substantial evidence. Plaintiff's brief primarily attempts to show a lack of substantial evidence by pointing to other evidence of record. Plaintiff contends that the facts upon which the ALJ relied do not accurately depict her functioning. ECF Dkt. #11 at 15. Plaintiff points to multiple pieces of evidence, arguing that they support a finding of disability, but she cites no caselaw supporting her conclusion. *See* ECF Dkt. #11 at 15. In reviewing this evidence, the Court reiterates that it cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

Plaintiff contends that she was in special education classes in high school. *Id.* citing Tr. at 277, 435, 439. In *Foster,* the Sixth Circuit held that a claimant did not have deficits in adaptive functioning based on her report to a doctor that she attended special education classes through ninth grade. *Foster*, 279 F.3d at 352, 354-55; *see also Mathious v. Barnhart*, 490 F.Supp.2d 833, 843

-6-

(E.D.Mich.,2007) ("The only evidence on the record that Plaintiff may have suffered 'significantly subaverage general intellectual functioning' prior to age 22 is a statement by Plaintiff that he attended Special Education classes (R. 266).FN9 [FN9 Dr. Williams notes that Plaintiff began special education in fifth grade (R. 237).] Plaintiff's counsel, however, states that those records have been destroyed, thereby providing no evidence in the record. Yet in *Foster*, the Sixth Circuit found that Plaintiff did not meet or equal the listing even though Plaintiff stated she had completed the ninth grade in Special Education classes and that she had tried four times without success to earn her GED. "). In this case, it appears that the only evidence of Plaintiff's enrollment in special education classes is her self-reporting. *See* ECF Dkt. #11 at 15 citing Tr. at 277, 435, 439. Notably, Dr. House's report indicates that Plaintiff was in a "slow learner class," not a special education class. Without school records, and with conflicting evidence as to the type of class in which Plaintiff was enrolled, the ALJ's decision was supported by substantial evidence.

Not only do *Foster* and *Mathious* support the ALJ's decision, but so do the other activities that the ALJ noted, such as successfully completing activities of daily living, maintaining personal hygiene, and caring for her seven-year-old son. Plaintiff contends that Dr. Bashour observed that she was "short" with her son and that she was at times slow to respond to questions. Tr. at 224, 225. Plaintiff also contends that medical records demonstrate that her treating physicians felt that she was "mentally slow." ECF Dkt. #11 at 15 citing Tr. at 224, 225. In fact, Dr. Bashour stated:

> Patient is a **little mentally slow** but after much counseling with her about her problems and surgery, she seems to be doing better.

Tr. at 224 (emphasis added). Notably, Dr. Bashour never advanced an opinion of mental retardation, despite his treatment relationship. That fact is not dispositive of whether Plaintiff meets Listing 12.05's introductory paragraph, but it constitutes evidence for the ALJ to consider. The *Thomas* court collected a number of cases in support of this proposition:

> *Alcorn v. Astrue*, Case No. 5:07cv212 DCR, 2008 WL 1790192, at *5 (E.D.Ky. Apr.18, 2008) (discussing [*West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698-99 (6th Cir. July 5, 2007)] and [*Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 872 (6th Cir.2003)] as cases in which the court approved of the ALJ's significant reliance on the absence of a diagnosis of mental retardation in the context of the introductory paragraph analysis); *Griffey v. Astrue*, Case No. 08cv786, 2009 WL 4396520, at *14

> (S.D.Ohio Dec.1, 2009) ("It is significant that no medical source of record thought Plaintiff met the diagnostic criteria for mental retardation, which are the same criteria necessary to satisfy [the] introductory paragraph of Listing 12.05C."); *Watts v. Astrue*, Case No. 6:08cv293-JBC, 2009 WL 3764044, at *4 (E.D.Ky. Nov.10, 2009) ("Importantly, even if the test scores were valid, not a single examiner said that the plaintiff met the description of mental retardation necessary to meet the 12.05 standard."); *Jones v. Comm'r Soc. Sec.*, Case No. 08cv562, 2009 WL 3498809, at *6 (W.D.Mich. Oct.26, 2009) (citing *Cooper* and *Daniels* and quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir.1997): "a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence ... in the record concerning the claimant's daily activities and behavior"). As the Commissioner indicates in the portion of his opening brief quoted above, significant reliance on a diagnosis of something other than "mental retardation," such as "borderline intellectual functioning," is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV. Indeed, the DSM-IV is "one of the leading texts in medicine" and, as noted above, it is used by Sixth Circuit courts to evaluate disability claims. [*Burrell v. Comm'r of Soc. Sec.*, No. 99-4070, 2000 U.S.App. LEXIS 33161, at *4 (6th Cir. Dec. 8, 2000)]; *Chandler v. Astrue*, No. 08-2265, 2010 U.S. Dist. LEXIS 1503, at *17 (N.D.Ohio Jan. 8, 2010) ("whether or not Plaintiff meets the requirements of the DSM-IV is relevant to whether or not she meets Listing 12.05.").

*Thomas*, 2010 WL 1254788 at *11.

Here, the ALJ appropriately looked to a diagnosis that was more precise than Dr. Bashour's observation that Plaintiff was a "little mentally slow." Dr. House diagnosed borderline intellectual functioning and rejected a diagnosis of mental retardation. Tr. at 282-84. As the introductory paragraph of Listing 12.05 requires, Dr. House's opinion directly confronted the issue of whether Plaintiff had mental retardation. The ALJ was therefore justified in finding Dr. House's diagnosis to be probative, as opposed to Dr. Bashour's less definitive observation that Plaintiff was "a little mentally slow." *See Thomas*, 2010 WL 1254788 at *11 ("As the Commissioner indicates in the portion of his opening brief quoted above, significant reliance on a diagnosis of something other than 'mental retardation,' such as 'borderline intellectual functioning,' is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV. Indeed, the DSM-IV is 'one of the leading texts in medicine' and, as noted above, it is used by Sixth Circuit courts to evaluate disability claims. ").

Plaintiff also contends that records generated at the Center for Families after the date last insured are relevant because they relate back to the insured period. ECF Dkt. #11 at 15. Again, Plaintiff cites no legal authority demonstrating that the evidence contained in these records

demonstrates a deficit in adaptive functioning. Following Dr. House's diagnosis of borderline intellectual functioning, Plaintiff does not direct the Court to any contrary diagnosis of mental retardation. *See* ECF Dkt. #11 at 15-16. Instead, Plaintiff contends that the Center for Families records show that she had dysfunctional relationships, her intellectual capacity appeared to be below normal, she was dependent on her husband and family, considered her parents' house to be a "safe haven," and at one point accidentally drank pine sol believing it was water. *Id*. Notably, the psychiatric evaluation to which Plaintiff directs the Court sets forth diagnoses, but deferred diagnosis pertaining to mental retardation.[1] There is no indication that this record is inconsistent with Dr. House's diagnosis of borderline intellectual functioning.

Lastly, Plaintiff points to her own testimony that she had difficulties in reading, remembering things, and concentrating. Tr. at 16 citing Tr. at 544. Plaintiff's testimony is not compelling because the ALJ noted that Plaintiff's difficulties in reading were inconsistent with her passing a written driving exam without assistance. Tr. at 20 citing Tr. at 281. Further, the ALJ also noted that Dr. House's memory testing showed that memory gaps, rather than mental retardation, could account for her interruptions in concentration. *Id*.

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in respect to whether Plaintiff meets the introductory paragraph of Listing 12.05.

### B. Whether the ALJ erred in assessing Plaintiff's RFC

Plaintiff next contends that the ALJ erred in assessing her RFC. ECF Dkt. #11 at 17-20. Plaintiff contends that the ALJ failed to give substantial weight to an opinion of Plaintiff's treating physician. ECF Dkt. #11 at 19-20. Plaintiff also contends that the ALJ erred because his RFC does not account for the limitations set forth by Dr. House and does not explain his reasons for failing to do so. ECF Dkt. #11 at 18-19.

---

[1] The evaluation deferred a diagnosis on "Axis II." Tr. at 436. The *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR*, sets forth a multiaxial assessment system, whereby each axis refers to a different domain of information that may help the clinician plan treatment and predict outcome. *DSM-IV-TR* at 27. Axis II is for reporting Personality Disorders and Mental Retardation. *Id*. at 28-29.

Plaintiff's argument pertaining to the ALJ's consideration of a treating physician opinion lacks merit. Plaintiff contends that Dr. Hussain and Nurse Brager completed a daily activities questionnaire, noting that she had slowed cognitive functioning, low frustration tolerance with her husband, and limitations in concentration and persistence at tasks due to low frustration. ECF Dkt. #11 at 19 citing Tr. at 387-88. Plaintiff contends that her doctors opined that she could not tolerate routine pressures involved in simple and routine or repetitive tasks. *Id*. citing Tr. at 388.

In this case, the treating physicians at issue did not examine Plaintiff until three and one-half months after the insured period. *See* Tr. at 387.[2] The Sixth Circuit has held that a treating physician's opinion, based on a treatment record that began eight months after the date last insured, was not entitled to substantial weight. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (per curium). Although the treatment record in this case was closer to the insured period than the records in *Siterlet* were, Plaintiff has not directed the Court to a case that shows the ALJ erred in not considering this opinion rendered after the insured period and based on evidence collected during the post-insured period. Another district court has held that an ALJ could appropriately reject an opinion from a treating physician whose first exam was within six months of the date last insured. *Wrenn v. Barnhart,* No. 04-CV-344-PB, 2005 WL 1522716 at *9 (D.N.H.,June 27, 2005), unreported. The *Wrenn* court acknowledged that a post-DLI opinion, wholly based on post-DLI examinations, could relate back to the insured period, but an ALJ was entitled to reject them where there was no indication that the physician's opinions contemplated an earlier period. In addition, the ALJ in this case also had the benefit of Dr. House's consultative evaluation conduction during the insured period. The ALJ explicitly stated that he was relying on this opinion because it was considering the evidence pertaining to the pertinent period. Tr. at 20. There is no indication that Dr. Hussain or Nurse Brager relied upon the evidence from the insured period in reaching their opinion. *See* Tr. at 387-89.

Lastly, the ALJ noted that these opinions were expressed only two months into the treatment

---

[2] Plaintiff's DLI was December 31, 2005. Tr. at 14. Dr. Hussain and Nurse Brager's opinion states that they first saw Plaintiff on April 18, 2006. Tr. at 387.

relationship and lacked longitudinal support. This was an appropriate consideration pursuant to 20 CFR 404.1527(d)(2)(i). Plaintiff contends that these opinions "continued forward based upon the treatment notes." ECF Dkt. #11 at 19-20. Plaintiff cites no authority for the propriety of this assumption. Plaintiff does not direct the Court to another record where Dr. Hussain or Nurse Brager restate their opinions based upon a more developed record. *See* ECF Dkt. #11 at 19-20. Rather, Plaintiff seeks to have the Court make an assumption that Dr. Hussain and Nurse Brager's opinions remained unchanged because Plaintiff continued to treat with them and in her opinion, her complaints were consistent with their daily activities questionnaire (Tr. at 387-89). *See* ECF Dkt. #11 at 20. The ALJ properly acted within his discretion in discounting their opinions and relying on Dr. House's opinion, which was based upon a review of evidence generated during the insured period.

Plaintiff alternatively contends that the ALJ's RFC fails to account for limitations that Dr. House advanced in his opinion. ECF Dkt. #11 at 17-19. The ALJ's decision states that he was affording Dr. House's opinion more weight than Dr. Hussain's opinion. Tr. at 20. The ALJ's decision also stated that it adopted the consultative assessment of Plaintiff's limitations in the broad areas of functioning. *Id*. citing Tr. at 308. Despite these findings, the ALJ only limited Plaintiff to performing 1- or 2- step tasks. Tr. at 17. The ALJ did not account for Dr. House's finding that Plaintiff has moderate limitations in the ability to withstand stress and pressure or Dr. Dietz's opinion that Plaintiff had moderate limitations in maintaining concentration, persistence, and pace. *Id*.

A limitation to 1- or 2- step tasks does not account for these restrictions, and the ALJ offered no explanation as to why he was not adopting portions of Dr. House's and Dr. Dietz's opinions related to Plaintiff's moderate limitations in the ability to withstand stress and pressure and in the ability to maintain concentration, persistence, and pace. Tr. at 20. The Court is not able to ascertain any basis in the ALJ's decision as to why he credited Dr. House's and Dr. Dietz's opinions but then chose not to incorporate all of their limitations in Plaintiff's RFC. Accordingly, the ALJ's decision is not supported by substantial evidence. Further, the ALJ's hypothetical question to the vocational

expert was based upon this unsupported RFC, making remand necessary. *See* Tr. at 21, 546.

For the foregoing reasons, the Court finds that the ALJ's decision with regard to Plaintiff's RFC is not support by substantial evidence and requires further factfinding, analysis, and articulation.

## VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the case for further factfinding, analysis, and articulation consistent with this opinion.

DATE: July 23, 2010            */s/George J. Limbert*
                                                                   GEORGE J. LIMBERT
                                                                     UNITED STATES MAGISTRATE JUDGE